**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Parris Frazier,<br><br>        Petitioner,<br><br>v.<br><br>USA,<br><br>        Respondent. | No. CV-17-01618-PHX-GMS (JZB)<br>(No. CR-15-00924-1-PHX-GMS)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

Movant Parris Frazier has filed a Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255, seeking to vacate or set aside a sentence imposed by the Court. (Doc. 1.)[1]

**I.    SUMMARY OF CONCLUSION.**

Movant argues counsel provided ineffective assistance by failing to work on his defense and pressuring him to plead guilty. Petitioner's statements during his change of plea proceeding and sentencing contradict his claims. Petitioner offers nothing more than conclusory assertions that are also refuted by the facts of his case. Petitioner's amended claim is meritless. The Court will recommend the Motion be dismissed.[2]

**II.   PROCEDURAL HISTORY.**

On February 23, 2016, pursuant to a plea agreement, Movant pleaded guilty to

---
[1] Citations to "Doc." are to the docket in 17-01618 PHX GMS (JZB). Citations to "CR Doc." are to the docket in the underlying criminal case, CR-15-00924 PHX GMS.
[2] Co-defendant Robert Deatherage filed a nearly identical Petition and Amendment in CV 17-1587-PHX GMS (JZB).

Possession of a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1)(A)(i), and stipulated to a term of imprisonment between six and ten years. (CR Doc. 48.) Movant admitted the following facts in his plea agreement were true:

> On or about February 11, 2015, I met a man named "Carlos" who I believed was a drug trafficker but who was really an undercover employee. On two occasions he told me where vehicles containing drug money were located in the Arizona desert and I along with my friend, Randon Berg, went to steal that money but only found $7000 in one of the vehicles. I continued to work with "Carlos" and on an unknown date in July 2015, I agreed to steal cocaine for "Carlos" and he would buy the cocaine from me for $15,000 per kilogram. I expected there to be 7-10 kilograms concealed in the car. I recruited Robert Deatherage and Erik Foster to help me steal the cocaine. They knew that I intended to sell it to "Carlos" that same day and we would all split the proceeds. On July 22, 2015, Robert Deatherage, Erik Foster and I, drove in a Toyota Camry to a location in Phoenix, AZ where I met with "Carlos" in a parking lot in order to find out where the cocaine was located. After meeting with "Carlos", I returned to the Toyota Camry and the three of us followed "Carlos" to a warehouse located on 39th Avenue in Phoenix, AZ where we believed the cocaine would be located in a vehicle. We removed the license plate of the Camry in order to conceal our identities. Prior to entering the warehouse parking lot, we conducted counter-surveillance. Foster was driving the Camry. I exited the Camry and cut the lock on the gate to the warehouse. After the lock was cut, Deatherage and I entered the warehouse parking lot on foot and located the car containing the cocaine. Deatherage stood guard while I searched the car for cocaine. I located six red packages that I believed contained cocaine and I later found out that one of the packages contained a kilogram of actual cocaine. Foster remained in the driver's seat of the Camry. We returned to the Camry and put the packages in a newly purchased duffle bag. We were soon pursued by law enforcement so we threw the duffle bag containing the cocaine out the window and we drove to my girlfriend's house. All three of us were armed with a pistol and a long gun while we were in the Camry and I had a pistol when I went to remove the cocaine out of the car in the warehouse parking lot. We removed the firearms when we arrived at my girlfriend's house where we were later arrested.
>
> Additionally, on July 22, 2015, law enforcement conducted a search warrant at my girlfriend's house in Phoenix where they found the 31 items listed in the forfeiture section of the plea agreement at the residence. I agree that my co-defendants and I possessed these items in furtherance of the conspiracy to possess with intent to distribute cocaine.

(CR Doc. 49 at 9-10.)

On July 18, 2016, the Court sentenced Movant to an 84-month term of imprisonment followed by five years of supervised release. (CR Doc. 88.)

\\\

### III. MOTION TO VACATE OR SET ASIDE SENTENCE.

#### A. Movant's Claims.

On May 25, 2017, Movant filed a Motion alleging four grounds for relief. (Doc. 1.) On May 31, 2017, the Court dismissed Grounds 1, 3, and 4. (Doc. 5 at 2.) "In Ground Two, Movant contends that he received ineffective assistance of counsel, asserting that his attorney 'never proved no weapon was involved,' never communicated with Movant, only wanted a plea agreement, and 'mis[]informed [Movant] of [his] rights to appeal.'" (*Id.*) On August 11, 2017, the Court granted Movant's request to amend his Petition. (Doc. 9.)

On September 15, 2017, the government filed a Response. (Doc. 11.) On November 20, 2017, Movant filed a Reply. (Doc. 6.)

#### B. Waiver and Procedural Bar.

The government argues "Defendant waived challenges to his sentence and this Court should dismiss the § 2255 petition based on the waiver." (Doc. 11 at 5.) The government agrees that the "waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel" claim. (*Id.*) A defendant may waive the statutory right to bring a § 2255 action challenging the length of his sentence through a plea agreement. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). But a plea agreement holds an invalid waiver if it is not entered into voluntarily and intelligently. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *Abarca*, 985 F.2d at 1014 (expressly declining to hold that a waiver forecloses a claim of involuntariness of the waiver).

Here, liberally construing his Petition and Amendment, Movant argues that his plea was not voluntary because counsel did not communicate with him, misinformed him regarding his rights, and pressured him to take a plea. (Doc. 1 at 6; Doc. 8 at 3-4.) The Court previously dismissed three of Movant's substantive claims. (Doc. 5 at 2-3.) Movant's claims that attack the voluntariness of his plea are not waived. *See Washington*

*v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective-assistance-of-counsel claim that challenges the voluntariness of the waiver).

### C. Ground Two of the Petition.

In Ground Two, Movant alleges his counsel was ineffective by (1) failing to prove no weapon was involved in the crime, (2) not communicating with Movant and (3) misinforming Movant of his right to appeal. (Doc. 1 at 2.) In the Amended Motion, Movant adds "clarifications and additions to his ineffective assistance of counsel argument." (Doc. 8 at 3.) He adds that counsel (4) "did not even attempt to put together a theory to defend me," (5) "pressured me to take a plea," (6) did not get discovery to prove a gun was not used in the offense, (7) cared more about his "paying" clients, and (8) never interviewed the confidential informant. (*Id*. at 3-4.)

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance—counsel's representation fell below the objective standard for reasonableness; and (2) prejudice—there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. A pleading defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Strickland*, 466 U.S. at 694. "To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's 'subjective state of mind' and the 'constitutional acceptability of the external forces inducing the guilty plea.'" *Doe v. Woodford*, 508 F.3d 563, 570-72 (9th Cir. 2007) (citation omitted). Because "it is difficult to probe the highly subjective state of mind of a criminal defendant, the best evidence of his understanding when pleading guilty is found in the record of the Rule 11 colloquy." *United States v.*

*Jimenez-Dominguez*, 296 F.3d 863, 869 (9th Cir. 2002).

Movant stated the following during the plea proceeding:

THE COURT: Did you read the Plea Agreement before you signed it?

THE DEFENDANT: Yes, I have, sir.

THE COURT: Did you understand everything that was in it?

THE DEFENDANT: Yes, I have, sir.

THE COURT: Did you have enough time to talk to your lawyer about any questions you might have had?

THE DEFENDANT: Yes, I have, sir.

THE COURT: Have you been satisfied with the representation that Mr. Buesing has provide[d] to you so far?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: The decision to plead guilty must always be voluntary. That means that it would be wrong for anyone to force you to plead guilty, to make threats against you to try to get you to plead guilty, or to make any unwritten promises to you. Has anybody done any of those things?

THE DEFENDANT: No, they haven't, Your Honor.

. . .

THE COURT: After a trial a person usually has the right to appeal any conviction, sentence or decision of the trial court that the person thinks is wrong.

And that appeal is to a higher court, a different court, it's the Ninth Circuit Court of Appeals which is based in San Francisco, or perhaps even the U.S. Supreme Court in Washington, D.C.

And if you couldn't afford the cost of the appeal or to pay for a lawyer, both of those would be provided to you at no expense.

But if you decide to plead guilty under the terms of your Plea Agreement, you will be giving up all of those appeal rights. And that is because the Plea Agreement includes a very broad waiver. It's set forth in paragraph 6, which starts in the bottom of page 4. And it states, in part, that you waive any and all motions, defenses, probable cause determinations and objections that you could assert to the Indictment, and any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction and order of restitution or forfeiture, the entry of judgment against you, or any aspect of your sentence, including the manner in which the sentence is determined.

Do you understand all of these appeal rights that you would be giving up

| | |
|---|---|
| 1 | under the terms of your Plea Agreement? |
| 2 | THE DEFENDANT: Yes, I do, Your Honor. |
| 3 | THE COURT: Is it your wish to give up all of those appeal rights? |
| 4 | THE DEFENDANT: Yes, it is, Your Honor. |

(CR Doc. 143 at 4, 7, 14-15.)

During sentencing, Movant told the Court:

THE DEFENDANT: Yes. Yes, Your Honor. I think Mr. Buesing has hit the nail on the head. I – I'm just – I'm just an – an old person that's trying to make my way through life. I – you know, a lot of these things that were said were said – it was a bolstering thing, because I was under the impression that this person was who he said he was.

I don't have it in me to go kill anybody, I really don't, because I just don't have it in me, you know. I made a very big mistake in all this stuff. I thought I was doing the right thing and it – and it turned around and it bit me in the – in the behind.

I thought that I could get away with, you know, setting this thing up, getting – getting – making – having everything go down and then turning him over to law enforcement using Arizona Revised Statutes, you know, citizen's arrest, felony drug, stuff like that, so I bolstered it up and, you know, it backfired on me.

I – I don't know what else to say, Your Honor, other than I'm sorry.

THE COURT: Thank you.

(CR Doc. 136 at 9-10.)

Here, the record conclusively shows that Movant is not entitled to relief because he fails to prove either deficient performance or prejudice. Contrary to his statements and conduct during his plea and sentencing, Movant now submits only conclusory statements that counsel's performance was deficient. But Movant previously expressed no reservations regarding his guilty plea colloquy. Movant agreed that no one forced him or threatened him to make him plead guilty. (Doc. 143 at 7.) Movant's statements are afforded significant weight. *See United States v. Kaczynski*, 239 F.3d 1108, 1115 (9th Cir. 2001) (giving "substantial weight" to a defendant's in-court statements in determining whether a guilty plea was voluntary); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry

a strong presumption of veracity in subsequent proceedings attacking the plea."). During his sentencing hearing, Movant apologized for his conduct and stated that his attorney "hit the nail on the head" regarding his arguments. (CR Doc. 136 at 9-10.) Movant spoke at sentencing and expressed no reservations regarding his counsel or his agreement. (*Id*.) Movant agreed that he understood he was waiving his right to appeal or attack his sentence. (*Id*. at 4-5.) *See United States v. Lunsford*, 787 F.2d 465, 466 (9th Cir. 1986) (finding without a hearing that defendant's "guilty plea was entered voluntarily and knowingly" where defendant did not object during plea colloquy or sentencing); *Muth v. Fondren*, 676 F.3d 815, 821-22 (9th Cir. 2012) (rejecting a movant's challenge to his guilty plea that was contradicted by his sworn statements during the change of plea hearing).

Also, the plea agreement required the government to dismiss Count One of the Indictment, which was a drug trafficking offense with a mandatory minimum of 10 years of imprisonment and a maximum of life imprisonment. (CR Doc. 87 at 4.) A conviction in Count One would have required mandatory, consecutive terms of imprisonment. After trial, Movant thus faced a mandatory minimum 15 years of imprisonment. In contrast, Movant's plea agreement stipulated to an imprisonment sentence as low as six years but no more than 10 years. Movant's claims that counsel should have proven a gun did not exist or developed a theory to defendant his are meritless in light of the record. During a recorded, post-arrest interview with a FBI Special Agent, Movant admitted that he participated in a "smash and grab" operation to steal cocaine. (Doc. 11-1 at 2.) Movant stated he and the coconspirators expected to earn $15,000 per kilogram of cocaine. (*Id*. at 3.) Movant admitted he was armed with a handgun and that there were rifles in a vehicle in case there was trouble exchanging the drugs for money with an informant. (*Id*.)[3] Movant admitted discarding evidence when he and the coconspirators were fleeing from police vehicles. (*Id*.) Movant stated that he wished he had previously shot the

---
[3] Agents found firearms after Movant's arrest, and Movant admitted in the factual basis of his plea agreement that he possessed weapons in connection with conduct alleged in Counts One and Two. (CR Doc. 49 at 9-10.)

informant and hoped that the coconspirators did not make statements to law enforcement. (*Id*. at 4.) Movant presents nothing more than conclusory allegations that counsel failed to effectively represent him. A review of Movant's prior sworn statements, the merits of his plea agreement, his post-arrest confession, and the lack of any evidence that counsel provided ineffective assistance renders Movant's claim meritless.

Movant also fails to establish prejudice. Importantly, Movant does not argue that he would not have pleaded guilty except for these errors, and the record demonstrates that he has failed to prove such a claim. In the Petition, Movant requests "a reduction in sentence." (Doc. 1 at 10.) In the Amended Petition, Movant requests the "conviction and judgment be set aside as void, with prejudice." (Doc. 8 at 5.) Movant never claims that he would have proceeded to trial except for counsel's conduct. Movant does not argue how counsel's alleged deficiencies compelled him to plead guilty. Movant offers nothing more than his conclusory claims. *See Bell v. Cone*, 535 U.S. 685, 695 (2002) ("Without proof of both deficient performance and prejudice to the defense . . . the sentence or conviction should stand."); *United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990) (finding petitioner failed to show prejudice where he avoid conviction on more serious charges).

**D.     Amended Petition – Actual Innocence.**

In the Amended Petition, Movant argues that he is actually innocent because "Defendant/Movant was not sentenced to any predicate offense which is needed/required to sustain the 18 U.S.C. § 924(c)(1)(A)(i) violation and sentence." (Doc. 8 at 2.) Here, Movant pleaded guilty to Count 2 of the Indictment and Count 1 (Conspiracy to Possess with Intent to Distribute Cocaine) was dismissed as a part of his plea agreement. (CR Doc. 49 at 4.) Movant's argument is meritless because the law does not require that Movant be convicted of the underlying offense; it only requires proof or an admission to the underlying crime. *See United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) ("a defendant charged with violating section 924(c)(1) must be proven to have committed the underlying crime, but nothing in the statute or the legislative history suggests he must be separately charged with and convicted of the underlying offense"); *United States v.*

*Luong*, 610 Fed. App'x. 598, 600 (9th Cir. 2015) (citing *Hunter* and stating that the "government need only prove the commission of the underlying felony; it need not also charge the defendant accordingly."). In the factual basis of his plea agreement, Movant agreed that he "had a pistol when [he] went to remove the cocaine out of the car in the warehouse parking lot" and that he possessed numerous firearms "in furtherance of the conspiracy to possess with intent to distribute cocaine." (CR Doc. 49 at 9-10.) Movant does not contest the sufficiency of the factual basis in his allegation. Instead, he asserts counsel should have pursued a dismissal because Movant was not convicted of a predicate offense in relation to his 18 U.S.C. § 924(c) conviction. Movant's claim is meritless and counsel was not ineffective for failing to pursue this claim.

**E.    Evidentiary Hearing.**

The Court shall hold an evidentiary hearing on a Movant's Motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). Here, the record conclusively shows Movant's counsel did not provide ineffective assistance.

Accordingly,

**IT IS RECOMMENDED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **DENIED** because Defendant has not made a substantial showing of the denial of a constitutional right.

\\\
\\\
\\\

| | |
|---|---|
| 1 | This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections. |

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 1st day of June, 2018.

Honorable John Z. Boyle
United States Magistrate Judge